E-FILED
Thursday, 06 April, 2023  01:47:52 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| WILLIAM TISDALE, Individually and for Others Similarly Situated, <br><br> v. <br><br> IOWA HEALTH SYSTEM d/b/a UNITYPOINT HEALTH. | **Case No.** _____ <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      William Tisdale ("Tisdale") brings this class and collective action to recover unpaid overtime wages, other wages, and damages from Iowa Health System d/b/a UnityPoint Health ("UnityPoint").

2.      Tisdale works for UnityPoint as a Security Officer at UnityPoint facilities in Illinois.

3.      Like the Putative Class Members (as defined below), Tisdale regularly works more than 40 hours in a workweek.

4.      But UnityPoint does not pay them for all the hours they work.

5.      Instead, UnityPoint automatically deducts 30 minutes a day from these employees' work time for so-called meal breaks.

6.      Tisdale and the Putative Class Members are thus not paid for that time.

7.      But UnityPoint fails to provide Tisdale and the Putative Class Members with *bona fide* meal breaks.

8.      Instead, UnityPoint requires Tisdale and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9.      UnityPoint's auto-deduction policy violates the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA") by depriving Tisdale and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek.

10.     Further, in addition to excluding time Tisdale and the Putative Class Members worked during their unpaid "meal breaks," UnityPoint also paid these employees different hourly rates (or "shift differentials") and/or bonuses depending on what type of shifts they worked.

11.     But UnityPoint failed to include these shift differentials and bonuses in calculating Tisdale's and the Putative Class Members' regular rates of pay for overtime purposes.

12.     UnityPoint's shift differential and bonus pay scheme violates the FLSA and IMWL by failing to pay Tisdale and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

### JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over UnityPoint because UnityPoint conducts substantial business – such as employing workers (like Tisdale) – throughout Illinois, including in this District and Division.

16.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

17.     Specifically, Tisdale works for UnityPoint in and around Peoria and Pekin, Illinois, which is in this District and Division.

## PARTIES

18.     Tisdale has worked for UnityPoint as a Security Officer at UnityPoint facilities in and around Peoria and Pekin, IL since approximately November 2021.

19.     Throughout his employment, UnityPoint classified Tisdale as non-exempt and paid him on an hourly basis.

20.     But UnityPoint subjected Tisdale to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

21.     Further, throughout his employment, UnityPoint paid Tisdale under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked.

22.     But UnityPoint failed to include these shift differentials and bonuses in calculating Tisdale's regular rate of pay for overtime purposes.

23.     Tisdale's written consent is attached as **Exhibit 1**.

24.     Tisdale brings this action on behalf of himself and other similarly situated hourly, non-exempt UnityPoint employees who (1) were subject to UnityPoint's automatic meal break deduction policy and/or (2) were paid under UnityPoint's shift differential and bonus pay scheme.

25.     UnityPoint uniformly requires these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

26.     UnityPoint uniformly pays these employees shift differentials and/or bonuses that UnityPoint fails to include in calculating their regular rates of pay for overtime purposes.

27.     Thus, UnityPoint uniformly deprives these employees of wages (including overtime compensation at the proper premium rate based on *all* renumeration received) for all hours worked, including those in excess of 40 hours in a workweek in violation of the FLSA, IMWL and the IWPCA.

28.     The FLSA Collectives of similarly situated employees are defined as:

> **All hourly, non-exempt UnityPoint employees who received an automatic meal period deduction at any time during the past 3 years ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective"); and**
>
> **All hourly, non-exempt UnityPoint employees who received shift differentials and/or bonuses at any time during the past 3 years ("FLSA Shift Diff Collective Members" or "FLSA Shift Diff Collective").**

29.     The FLSA Meal Break Collective Members and the FLSA Shift Diff Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

30.     Tisdale also seeks to represent such classes under the IMWL and IWPCA pursuant to FED. R. CIV. P. 23.

31.     The Illinois Classes of similarly situated employees are defined as:

> **All hourly, non-exempt UnityPoint[1] employees who received an automatic meal period deduction while working in Illinois at any time during the past 10 years ("Illinois Meal Break Class Members" or "Illinois Meal Break Class"); and**
>
> **All hourly, non-exempt UnityPoint employees who received shift differentials and/or bonuses at any time while working in Illinois during the past 3 years ("Illinois Shift Diff Class Members" or "Illinois Shift Diff Class").**

32.     The Illinois Meal Break Class Members and the Illinois Shift Diff Class Members are collectively referred to as the "Illinois Class Members" or "Illinois Classes."

33.     The FLSA Collective Members and Illinois Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

---

[1] The Illinois Meal Break Class expressly includes any employees who worked for Iowa Health System prior to its 2013 rebranding to UnityPoint Health. *See* https://www.unitypoint.org/about-unitypoint-health ("Until 2013, [UnityPoint] w[as] known as Iowa Health System.") (last visited April 4, 2023).

34.     UnityPoint is an Iowa not-for-profit corporation that maintains its headquarters in Des Moines, Iowa.

35.     Until 2013, UnityPoint operated under the name "Iowa Health System."[2]

36.     UnityPoint may be served with process by serving its registered agent: **URS Agents, LLC, 30 North LaSalle Street, Suite 1510, Chicago, Illinois 60602**.

### COVERAGE UNDER THE FLSA

37.     At all relevant times, UnityPoint was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38.     At all relevant times, UnityPoint, as a hospital network and institution primarily engaged in healthcare, was an enterprise within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

39.     At all relevant times, UnityPoint was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because UnityPoint, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

40.     UnityPoint uniformly deducted 30 minutes/shift from Tisdale and the FLSA Collective Members' wages for meal breaks, even when these employees did not actually receive bona fide, non-interrupted meal breaks.

41.     As a result, UnityPoint failed to pay Tisdale and the FLSA Collective Members for this compensable work, including overtime wages, in violation of the FLSA.

---

[2] *See* https://www.unitypoint.org/about-unitypoint-health (last visited April 4, 2023).

42. UnityPoint's automatic meal break deduction policy, which deprives Tisdale and the FLSA Collective Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

43. Further, UnityPoint uniformly failed to include shift differential payments and bonuses Tisdale and the FLSA Collective Members received in calculating these employees' regular rates of pay for overtime purposes.

44. As a result, UnityPoint failed to pay Tisdale and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

45. UnityPoint's shift differential and bonus pay scheme, which deprives Tisdale and the FLSA Collective Members of overtime compensation at the proper premium rate, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

FACTUAL ALLEGATIONS

46. UnityPoint bills itself as "the nation's fifth largest non-denominational health system" that "provide[s] care throughout Iowa, western Illinois, and southern Wisconsin in non-for-profit hospitals, clinics, and home health settings."[3]

47. UnityPoint employs workers, including Tisdale and the Putative Class Members, to work at its various healthcare facilities.

48. UnityPoint uniformly classifies these employees as non-exempt from overtime compensation and pays them on an hourly basis.

49. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices.

---

[3] *See* https://www.unitypoint.org/about-unitypoint-health (last visited April 4, 2023).

50.     For example, Tisdale has worked for UnityPoint as a Security Officer in Pekin, IL since November 2021.

51.     As a Security Officer, Tisdale's primary responsibilities include providing security and supervision of the UnityPoint healthcare facilities to which he is assigned to ensure the overall safety of the facilities by preventing weapons and other contraband from entering the facilities and negatively impacting the healthcare professionals from safely treating patients.

52.     Throughout his employment, UnityPoint classified Tisdale as non-exempt and paid him on an hourly basis.

53.     Throughout his employment, UnityPoint subjected Tisdale to its common practice of automatically deducting 30 minutes from his recorded hours worked and wages each shift for meal breaks, regardless of whether he actually received a *bona fide* meal break.

54.     Tisdale and the Putative Class Members performed their jobs under UnityPoint's supervision, and using materials, equipment, and technology approved and supplied by UnityPoint.

55.     UnityPoint requires Tisdale and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

56.     At the end of each pay period, Tisdale and the Putative Class Members received wages from UnityPoint that were determined by common systems and methods that UnityPoint selected and controlled.

57.     UnityPoint requires its hourly, non-exempt employees, including Tisdale and the Putative Class Members, to record their hours worked using UnityPoint's timeclock system.

58.     Further, UnityPoint subjects its hourly, non-exempt employees, including Tisdale and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

- 7 -

59.     Specifically, UnityPoint automatically deducts 30 minutes from Tisdale's and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

60.     But UnityPoint fails to provide Tisdale and the Putative Class Members with *bona fide* meal periods.

61.     Instead, UnityPoint requires Tisdale and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

62.     This unpaid time is compensable under the FLSA and/or IMWL because UnityPoint knew, or should have known, that (1) Tisdale and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 20 consecutive minutes.

63.     UnityPoint failed to exercise its duty to ensure Tisdale and the Putative Class Members were not performing work that UnityPoint did not want performed during their unpaid "meal breaks."

64.     The unpaid time is also compensable under the IWPCA because UnityPoint agreed to pay Tisdale and the Illinois Meal Break Class Members an hourly rate of pay for all time they worked, and UnityPoint failed to pay Tisdale and the Illinois Meal Break Class Members all their earned wages.

65.     Despite accepting the benefits, UnityPoint did not pay Tisdale and the Putative Class Members for the compensable work they performed during their "meal breaks."

66.     Thus, under UnityPoint's uniform automatic meal break deduction policy, Tisdale and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA and IMWL.

67.     Likewise, under UnityPoint's uniform automatic meal break deduction policy, Tisdale and the Illinois Meal Break Class Members are denied "straight time" pay for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the IWPCA.

68.     UnityPoint also subjects Tisdale and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment.

69.     UnityPoint's uniform rounding policy violates the FLSA and IMWL by depriving Tisdale and the Putative Class Members of overtime pay for all overtime hours worked because UnityPoint fails to include all work time in these employees' total hours worked.

70.     Likewise, UnityPoint's uniform rounding policy violates the IWPCA by depriving Tisdale and the Illinois Class Members of "straight time" pay for all hours worked up to 40 hours in a workweek because UnityPoint fails to include all work time in these employees' total hours worked.

71.     Further, in addition to excluding time Tisdale and the Putative Class Members worked during their unpaid "meal breaks," UnityPoint also paid these employees shift differentials and bonuses depending on what type of shifts they worked.

72.     But UnityPoint failed to include these shift differentials and bonuses in calculating Tisdale and the Putative Class Members' regular rates of pay for overtime purposes.

73.     UnityPoint's shift differential pay scheme violates the FLSA and IMWL by failing to pay Tisdale and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

74.     UnityPoint knows Tisdale and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because UnityPoint expects and requires these employees to do so.

75.     But UnityPoint does not pay Tisdale and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA, IMWL, and/or IWPCA.

76.     Tisdale worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

77.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

78.     Indeed, UnityPoint typically schedules Tisdale and the Putative Class Members to work 12-hour shifts for 4 days a workweek.

79.     And Tisdale and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

80.     As a result, Tisdale and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

81.     When Tisdale and the Putative Class Members worked more than 40 hours in a workweek, UnityPoint did not pay them 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked because UnityPoint failed to include (1) time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek and (2) these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

82.     Likewise, when Tisdale and the Illinois Class Members worked fewer than 40 hours in a workweek, UnityPoint did not pay them "straight time" pay (at their agreed hourly rates) for all hours worked because UnityPoint failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

83.     UnityPoint knew, or should have known, it was subject to the FLSA and IMWL, including their respective overtime provisions.

84.     UnityPoint knew, or should have known, the FLSA and IMWL require it to pay employees, including Tisdale and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

85.     UnityPoint knew, or should have known, Tisdale and the Putative Class Members worked more than 40 hours in a workweek.

86.     UnityPoint knew, or should have known, Tisdale and the Putative Class Members regularly worked during their unpaid meal breaks because UnityPoint expected and required them to do so.

87.     UnityPoint knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Tisdale and the Putative Class Members of pay, including overtime compensation at the proper premium rates, for all hours worked in violation of the FLSA, IMWL, and/or IWPCA.

88.     Nonetheless, UnityPoint failed to pay Tisdale and the Putative Class Members overtime compensation at the proper premium rate for all hours these employees worked, including those worked in excess of 40 hours in a workweek.

89.     Likewise, UnityPoint failed to pay Tisdale and the Illinois Class Members all their wages earned at the rates UnityPoint agreed to pay them for the work they performed for UnityPoint.

90.     UnityPoint's failure to pay Tisdale and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

## CLASS & COLLECTIVE ALLEGATIONS

91.     Tisdale brings his claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

92.     The Putative Class Members were uniformly victimized by UnityPoint's automatic meal break deduction policy and/or UnityPoint's shift differential and bonus pay scheme, which are in willful violation of the FLSA, IMWL, and/or IWPCA.

93.     Other Putative Class Members worked with Tisdale and indicated they were paid in the same manner and were subject to UnityPoint's same illegal pay policies.

94.     Based on his experiences with UnityPoint, Tisdale is aware UnityPoint's illegal practices were imposed on the Putative Class Members.

95.     The Putative Class Members are similarly situated in all relevant respects.

96.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

97.     Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

98.     Rather, the Putative Classes are held together by UnityPoint's uniform automatic meal break deduction policy and/or UnityPoint's uniform shift differential and bonus pay scheme that systematically deprived Tisdale and the Putative Class Members of wages, including overtime pay at the proper premium rate based on all renumeration received, for all hours worked, including those hours worked in excess of 40 hours in a workweek.

99.     The Illinois Meal Break Class Members are similarly denied "straight time" pay when they worked fewer than 40 hours in a workweek.

100.    The Putative Class Members are similarly denied overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

101.    The back wages owed to Tisdale and the Putative Class Members will be calculated using the same records and using the same formula.

102.    Tisdale's experiences are therefore typical of the experiences of the Putative Class Members.

103.    Tisdale has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

104.    Like each Putative Class Member, Tisdale has an interest in obtaining the unpaid wages owed under federal and/or state law.

105.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

106.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and UnityPoint will reap the unjust benefits of violating the FLSA, IMWL, and IWPCA.

107.    Further, even if some of the Putative Class Members could afford individual litigation against UnityPoint, it would be unduly burdensome to the judicial system.

108.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

109.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

110.    Among the common questions of law and fact are:

a.    Whether UnityPoint engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, IMWL, and/or IWPCA;

b.　　Whether UnityPoint's automatic meal break deduction policy deprived
Tisdale and the Putative Class Members of pay for time worked during meal
periods that were not *bona fide*, continuous, and uninterrupted in violation of
the FLSA, IMWL, and/or IWPCA;

c.　　Whether UnityPoint failed to pay Tisdale and the Putative Class Members
overtime compensation for all hours worked in excess of 40 hours in a
workweek, including hours worked during missed and interrupted meal
breaks in violation of the FLSA and IMWL;

d.　　Whether UnityPoint failed to pay Tisdale and the Illinois Meal Break Class
Members "straight time" pay at their agreed hourly rates for all hours worked
because UnityPoint failed to include time these employees worked during
their meal breaks in their total number of hours worked in a given workweek
in violation of the IWPCA;

e.　　Whether UnityPoint knew, or had reason to know, Tisdale and the Putative
Class Members were requested, suffered, permitted, or allowed to work
during their unpaid meal breaks in violation of the FLSA, IMWL, and
IWPCA;

f.　　Whether UnityPoint failed to include Tisdale and the Putative Class
Members' shift differentials and bonuses in calculating these employees'
regular rates of pay for overtime purposes in violation of the FLSA and
IMWL;

g.　　Whether UnityPoint's violations of the FLSA, IMWL, and/or IWPCA
resulted from a continuing course of conduct;

h.      Whether UnityPoint's decision not to pay Tisdale and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith; and

i.      Whether UnityPoint's violations of the FLSA, IMWL, and/or IWPCA were willful.

111.    Tisdale and the Putative Class Members sustained damages arising out of UnityPoint's illegal and uniform employment policy.

112.    Tisdale knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

113.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to UnityPoint's records, and there is no detraction from the common nucleus of liability facts.

114.    Therefore, the issue of damages does not preclude class or collective treatment.

115.    UnityPoint is liable under the IWPCA for failing to pay Tisdale and the Illinois Meal Break Class Members "straight time" pay (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

116.    UnityPoint is liable under the FLSA and IMWL for failing to pay Tisdale and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

117.    Consistent with UnityPoint's illegal automatic meal break deduction policy, Tisdale and the Illinois Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

118.     Consistent with UnityPoint's illegal automatic meal break deduction policy, Tisdale and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

119.     Consistent with UnityPoint's illegal shift differential and bonus pay scheme, Tisdale and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

120.     As part of its regular business practices, UnityPoint intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, IMWL, and/or IWPCA with respect to Tisdale and the Putative Class Members.

121.     UnityPoint's illegal policies deprived Tisdale and the Putative Class Members of wages, including overtime compensation at the proper premium rate for all overtime hours worked, which they are owed under federal and/or state law.

122.     There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

123.     This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

124.     Those similarly situated employees are known to UnityPoint, are readily identifiable, and can be located through UnityPoint's records.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FLSA
### (FLSA COLLECTIVES)

125.     Tisdale realleges and incorporates all other paragraphs by reference.

126.     Tisdale brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

127.     UnityPoint violated, and is violating, the FLSA by failing to pay Tisdale and the FLSA Collective Members overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

128.     Throughout the relevant period, UnityPoint expected and required Tisdale and the FLSA Collective Members to remain on-duty and be available to work during their unpaid meal breaks.

129.     Throughout the relevant period, UnityPoint paid Tisdale and the FLSA Collective Members shift differentials and bonuses that it failed to include in its calculations on these employees' regular rates of pay for overtime purposes.

130.     Tisdale and the FLSA Collective Members have been harmed as a direct and proximate result of UnityPoint's unlawful conduct because they have been deprived of wages owed for work that they performed and from which UnityPoint derived a direct and substantial benefit.

131.     UnityPoint knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Tisdale and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked.

132.     UnityPoint's failure to pay Tisdale and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

133.     Accordingly, Tisdale and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE IMWL
### (ILLINOIS CLASSES ONLY)

134.    Tisdale realleges and incorporates all other paragraphs by reference.

135.    Tisdale brings his claim under the IMWL as a Rule 23 class action.

136.    The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

137.    UnityPoint violated, and is violating, the IMWL by failing to pay Tisdale and the Illinois Class Members overtime compensation at the proper premium rate for all hours worked in excess of 40 in a workweek.

138.    At all relevant times, UnityPoint was subject to the requirements of the IMWL.

139.    At all relevant times, UnityPoint employed Tisdale and the Illinois Class Members as "employees" within the meaning of the IMWL.

140.    The IMWL requires employers, like UnityPoint, to pay employees at a rate not less than 1.5 times their regular rate of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in any one workweek.

141.    Tisdale and the Illinois Class Members are entitled to overtime pay under the IMWL.

142.    UnityPoint's automatic meal break deduction policy violates the IMWL because it deprives Tisdale and the Illinois Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek. *See* 820 ILCS 105/4a.

143.    Further, UnityPoint's shift differential and bonus pay scheme violates the IMWL because it deprives Tisdale and the Illinois Class Members of overtime pay at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked. *See* 820 ILCS 105/4a.

144.    Accordingly, Tisdale and the Illinois Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages,

as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE IWPCA
### (ILLINOIS MEAL BREAK CLASS ONLY)

145.    Tisdale realleges and incorporates all other paragraphs by reference.

146.    Tisdale brings his claim under the IWPCA as a Rule 23 class action.

147.    The conduct alleged violates the IWPCA (820 ILCS 115/1, *et seq.*).

148.    UnityPoint violated, and is violating, the IWPCA by failing to pay Tisdale and the Illinois Meal Break Class Members all wages earned for all hours worked at the hourly rates UnityPoint agreed to pay them for the work they performed.

149.    At all relevant times, UnityPoint was subject to the requirements of the IWPCA.

150.    At all relevant times, UnityPoint employed Tisdale and the Illinois Meal Break Class Members as "employees" within the meaning of the IWPCA.

151.    The IWPCA requires employers, like UnityPoint, to pay employees for all time they worked at the rate agreed to by the parties.

152.    During the course of their employment, UnityPoint agreed to pay Tisdale and each Illinois Meal Break Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek.

153.    Tisdale and each Illinois Meal Break Class Member accepted UnityPoint's offer.

154.    But during the course of their employment, UnityPoint failed to pay Tisdale and the Illinois Meal Break Class Members for all time they worked at the rates UnityPoint agreed to pay them for the work they performed because UnityPoint automatically deducted 30 minutes/shift from these employees' recorded hours worked.

155.     UnityPoint's automatic meal break deduction policy violates the IWPCA because it deprives Tisdale and the Illinois Meal Break Class Members of pay for all hours worked at the rates UnityPoint agreed to pay them.

156.     Accordingly, Tisdale and the Illinois Meal Break Class Members are entitled to recover their unpaid "straight time" compensation (at their agreed hourly rates) owed from the 10 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 115/14(a).

**JURY DEMAND**

157.     Tisdale demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Tisdale, individually and on behalf of the Putative Class Members, seeks the following relief:

a.     An Order designating the FLSA Collectives as collective actions and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.     An Order designating the Illinois Classes as class actions pursuant to FED. R. CIV. P. 23;

c.     An Order appointing Tisdale and his counsel to represent the interests of the FLSA Collectives and Illinois Classes;

d.     An Order pursuant to Section 16(b) of the FLSA finding UnityPoint liable for unpaid back wages due to Tisdale and the FLSA Collective Members, as

well as for liquidated damages in an amount equal to their unpaid compensation;

e.      An Order finding UnityPoint liable to Tisdale and the Illinois Class Members for unpaid overtime compensation owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f.      An Order finding UnityPoint liable to Tisdale and the Illinois Meal Break Class Members for unpaid "straight time" wages owed under the IWPCA, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

g.      Judgment awarding Tisdale and the Putative Class Members all unpaid compensation and other damages available under the FLSA, IMWL, and IWPCA;

h.      An Injunction precluding UnityPoint from violating the IWPCA;

i.      An Order awarding attorney's fees, costs, and expenses;

j.      Pre- and post-judgment interest at the highest applicable rates; and

k.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Douglas M. Werman_

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com
*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**