# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| WILLIAM TISDALE, Individually and for Others Similarly Situated, <br><br> v. <br><br> IOWA HEALTH SYSTEM d/b/a UNITYPOINT HEALTH. | **Case No. 1:23-cv-01142-MMM-JEH** <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Rule 23 Class Action |

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      William Tisdale ("Tisdale") brings this class and collective action to recover unpaid wages, overtime wages, and other damages from Iowa Health System d/b/a UnityPoint Health ("UnityPoint").

2.      Tisdale works for UnityPoint as a Security Officer at UnityPoint facilities in Illinois.

3.      Like the Putative Class Members (as defined below), Tisdale regularly works more than 40 hours in a workweek.

4.      But UnityPoint does not pay them for all the hours they work.

5.      Instead, UnityPoint automatically deducts 30 minutes a day from these employees' work time for so-called meal breaks.

6.      Tisdale and the Putative Class Members are thus not paid for that time.

7.      But Tisdale and the Putative Class Members do not actually receive *bona fide* meal breaks.

8.      Instead, UnityPoint requires Tisdale and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9.      UnityPoint's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") by depriving Tisdale and the Putative Class Members of overtime wages for all overtime hours worked.

10.     Likewise, UnityPoint's auto-deduction policy violates the Illinois Wage Payment and Collection Act ("IWPCA") by depriving Tisdale and the Putative Class Members of earned wages (at their agreed hourly rates) for all hours worked.

### JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.     This Court has specific personal jurisdiction over UnityPoint with respect to this action because UnityPoint conducts substantial business – such as employing workers (like Tisdale) – throughout Illinois, including in this District and Division.

14.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

15.     Specifically, Tisdale works for UnityPoint in and around Peoria and Pekin, Illinois, which is in this District and Division.

### PARTIES

16.     Tisdale has worked for UnityPoint as a Security Officer at UnityPoint facilities in and around Peoria and Pekin, IL since approximately November 2021.

17.     Throughout his employment, UnityPoint classified Tisdale as non-exempt and paid him on an hourly basis.

18.     Throughout his employment, UnityPoint subjected Tisdale to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

19.     But throughout his employment, Tisdale did not actually receive *bona fide* meal breaks.

20.     Tisdale's written consent was already filed. *See* Doc. 1-1.

21.     Tisdale brings this action on behalf of himself and other similarly situated hourly, non-exempt UnityPoint employees who were subject to UnityPoint's automatic meal break deduction policy.

22.     UnityPoint automatically deducts 30 minutes a day from these employees recorded work time (and wages) for so-called "meal breaks."

23.     But these employees do not actually receive *bona fide* meal breaks.

24.     Instead, UnityPoint uniformly requires these employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

25.     Thus, UnityPoint uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA and/or IMWL.

26.     Likewise, UnityPoint uniformly deprives these employees of earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

27.     The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt UnityPoint employees who received an automatic meal period deduction at any time during the past 3 years ("FLSA Collective Members").**

28.     Tisdale also seeks to represent such a class under the IMWL and IWPCA pursuant to Fed. R. Civ. P. 23.

29.     The Illinois Class of similarly situated employees is defined as:

> **All hourly, non-exempt UnityPoint[1] employees who received an automatic meal period deduction while working in Illinois at any time during the past 10 years ("Illinois Class Members").**

30.     The FLSA Collective Members and Illinois Class Members are collectively referred to as the "Putative Class Members."

31.     UnityPoint is an Iowa not-for-profit corporation that maintains its headquarters in Des Moines, Iowa.

32.     Until 2013, UnityPoint operated under the name "Iowa Health System."[2]

33.     UnityPoint has already been served with process and appeared in this case. *See* Doc. 5; Doc. 15.

### COVERAGE UNDER THE FLSA

34.     At all relevant times, UnityPoint was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.     At all relevant times, UnityPoint, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

36.     At all relevant times, UnityPoint was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because UnityPoint, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

---

[1] The Illinois Meal Break Class expressly includes any employees who worked for Iowa Health System prior to its 2013 rebranding to UnityPoint Health. *See* https://www.unitypoint.org/about-unitypoint-health ("Until 2013, [UnityPoint] w[as] known as Iowa Health System.") (last visited August 10, 2023).
[2] *See* https://www.unitypoint.org/about-unitypoint-health (last visited April 4, 2023).

37.     In each of the last 3 years, UnityPoint has had an annual gross volume of sales made or business done of not less than $500,000 each year.

38.     At all relevant times, Tisdale and the FLSA Collective Members were UnityPoint's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(3).

39.     At all relevant times, Tisdale and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce.

40.     UnityPoint uniformly deducted 30 minutes/shift from Tisdale's and the FLSA Collective Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

41.     As a result, UnityPoint failed to pay Tisdale and the FLSA Collective Members for this compensable work, including overtime wages, in violation of the FLSA.

42.     UnityPoint's automatic meal break deduction policy, which deprives Tisdale and the FLSA Collective Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTUAL ALLEGATIONS

43.     UnityPoint bills itself as "the nation's fifth largest non-denominational health system" that "provide[s] care throughout Iowa, western Illinois, and southern Wisconsin in non-for-profit hospitals, clinics, and home health settings."[3]

44.     UnityPoint employs workers, including Tisdale and the Putative Class Members, to work at its various healthcare facilities.

45.     UnityPoint uniformly classifies these employees as non-exempt from overtime compensation and pays them on an hourly basis.

---

[3] *See* https://www.unitypoint.org/about-unitypoint-health (last visited August 10, 2023).

46.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices.

47.     For example, Tisdale has worked for UnityPoint as a Security Officer in Pekin, IL since November 2021.

48.     As a Security Officer, Tisdale's primary responsibilities include providing security and supervision of the UnityPoint healthcare facilities to which he is assigned to ensure the overall safety of the facilities by preventing weapons and other contraband from entering the facilities and negatively impacting the healthcare professionals from safely treating patients.

49.     Throughout his employment, UnityPoint classified Tisdale as non-exempt and paid him on an hourly basis.

50.     Throughout his employment, UnityPoint subjected Tisdale to its common practice of automatically deducting 30 minutes from his recorded hours worked and wages each shift for meal breaks, regardless of whether he actually received a *bona fide* meal break.

51.     But throughout his employment, Tisdale did not actually receive *bona fide* meal breaks.

52.     Tisdale and the Putative Class Members performed their jobs under UnityPoint's supervision, and using materials, equipment, and technology approved and supplied by UnityPoint.

53.     UnityPoint requires Tisdale and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

54.     At the end of each pay period, Tisdale and the Putative Class Members received wages from UnityPoint that were determined by common systems and methods that UnityPoint selected and controlled.

55.     UnityPoint requires its hourly, non-exempt employees, including Tisdale and the Putative Class Members, to record their hours worked using UnityPoint's timeclock system.

56.     Further, UnityPoint subjects its hourly, non-exempt employees, including Tisdale and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

57.     Specifically, UnityPoint automatically deducts 30 minutes a day from Tisdale's and the Putative Class Members' recorded work time for meal periods.

58.     UnityPoint automatically deducts this time regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

59.     Indeed, UnityPoint simply assumes Tisdale and the Putative Class Members receive *bona fide* meal breaks each shift they work.

60.     But UnityPoint fails to provide Tisdale and the Putative Class Members with *bona fide* meal periods.

61.     And Tisdale and the Putative Class Members do not actually receive *bona fide* meal breaks.

62.     Instead, UnityPoint requires Tisdale and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

63.     And UnityPoint continuously subjects them to work interruptions during their unpaid meal periods.

64.     Because of these constant work interruptions, Tisdale and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

65.     Rather, during their unpaid meal periods, Tisdale and the Putative Class Members are necessarily forced to substantially perform their regular job duties.

66.     Thus, Tisdale and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for UnityPoint's—not these employees'—predominant benefit.

67.     This unpaid time is compensable under the FLSA and/or IMWL because UnityPoint knew, or should have known, that (1) Tisdale and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, (4) the meal period was less than 20 consecutive minutes, (5) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (6) they remained on UnityPoint's premises and under UnityPoint's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular job duties for UnityPoint's predominant benefit.

68.     The unpaid time is also compensable under the IWPCA because UnityPoint agreed to pay Tisdale and the Illinois Class Members an hourly rate of pay for all time they worked, and UnityPoint failed to pay Tisdale and the Illinois Class Members all their earned wages.

69.     UnityPoint failed to exercise its duty as Tisdale's and the Putative Class Members' employer to ensure these employees were not performing work that UnityPoint did not want performed during their unpaid "meal breaks."

70.     UnityPoint knows Tisdale and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because UnityPoint expects and requires these employees to do so.

71.     Despite accepting the benefits, UnityPoint did not pay Tisdale and the Putative Class Members for the compensable work they performed during their "meal breaks."

72.     Thus, under UnityPoint's uniform automatic meal break deduction policy, Tisdale and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA and/or IMWL.

73.     Likewise, under UnityPoint's uniform automatic meal break deduction policy, Tisdale and the Illinois Class Members are denied earned wages (at their agreed hourly rates) for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the IWPCA.

74.     Further, in addition to automatically deduction time from these employees' wages for "meal breaks," UnityPoint also subjects Tisdale and the Putative Class Members to its uniform policy of automatically rounding their recorded time punches to the nearest 15-minute increment to UnityPoint's—not these employees'—predominant benefit.

75.     UnityPoint's uniform rounding policy violates the FLSA and IMWL by depriving Tisdale and the Putative Class Members of overtime pay for all overtime hours worked because UnityPoint fails to include all work time in these employees' total hours worked.

76.     Likewise, UnityPoint's uniform rounding policy violates the IWPCA by depriving Tisdale and the Illinois Class Members of earned wages (at their agreed hourly rates) for all hours worked up to 40 hours in a workweek because UnityPoint fails to include all work time in these employees' total hours worked.

77.     Tisdale worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

78.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

79.     Indeed, Tisdale and the Putative Class Members typically work 12-hour shifts for at least 4 days a workweek.

80.     And Tisdale and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

81.     As a result, Tisdale and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

82.     When Tisdale and the Putative Class Members worked more than 40 hours in a workweek, UnityPoint did not pay them overtime wages at rates not less than 1.5 times their regular rates of pay for all overtime hours worked because UnityPoint failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the FLSA and/or IMWL.

83.     Likewise, when Tisdale and the Illinois Class Members worked fewer than 40 hours in a workweek, UnityPoint did not pay them all their earned wages (at their agreed hourly rates) for all hours worked because UnityPoint failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the IWPCA.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

84.     Tisdale incorporates all other paragraphs by reference.

85.     Tisdale brings his claims as a class and collective action on behalf of himself and the Putative Class Members.

86.     The Putative Class Members were uniformly victimized by UnityPoint's automatic meal break deduction policy, which is in willful violation of the FLSA, IMWL, and/or IWPCA.

87.     Other Putative Class Members worked with Tisdale and indicated they were paid in the same manner and were subject to UnityPoint's same illegal pay policies.

88.     Based on his experiences with UnityPoint, Tisdale is aware UnityPoint's illegal practices were imposed on the Putative Class Members.

89.     The Putative Class Members are similarly situated in all relevant respects.

90.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

91.     Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

92.     Rather, the Putative Classes are held together by UnityPoint's uniform automatic meal break deduction policy that systematically deprived Tisdale and the Putative Class Members of earned wages for all hours worked and and overtime wages, for all hours worked after 40 in a workweek.

93.     UnityPoint's records reflect the number of hours the Putative Class Members recorded they worked each week.

94.     UnityPoint's records also show it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

95.     The back wages owed to Tisdale and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

96.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to UnityPoint's records, and there is no detraction from the common nucleus of liability facts.

97.     Therefore, the issue of damages does not preclude class or collective treatment.

98.     Tisdale's experiences are therefore typical of the experiences of the Putative Class Members.

99.     Tisdale has no interests contrary to, or in conflict with, the Putative Class Members.

100.    Like each Putative Class Member, Tisdale has an interest in obtaining the unpaid wages owed under federal and/or state law.

101.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

102.    Absent this class and collective action, many Putative Class Members will not obtain redress for their injuries, and UnityPoint will reap the unjust benefits of violating the FLSA, IMWL, and IWPCA.

103.    Further, even if some of the Putative Class Members could afford individual litigation against UnityPoint, it would be unduly burdensome to the judicial system.

104.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

105.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

106.    Among the common questions of law and fact are:

a.      Whether UnityPoint engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, IMWL, and/or IWPCA;

b.      Whether UnityPoint's automatic meal break deduction policy deprived Tisdale and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, IMWL, and/or IWPCA;

c.      Whether UnityPoint failed to pay Tisdale and the Putative Class Members overtime compensation for all hours worked after 40 in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA and/or IMWL;

d.      Whether UnityPoint failed to pay Tisdale and the Illinois Class Members all their earned wages at their agreed hourly rates for all hours worked because UnityPoint failed to include time these employees worked during their meal breaks in their total number of hours worked in a given workweek in violation of the IWPCA;

e.      Whether UnityPoint knew, or had reason to know, Tisdale and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA, IMWL, and/or IWPCA;

f.      Whether UnityPoint's violations of the FLSA, IMWL, and/or IWPCA resulted from a continuing course of conduct; Whether UnityPoint's decision not to pay Tisdale and the Putative Class Members overtime wages for all overtime hours worked was made in good faith;

g.      Whether UnityPoint's decision not to pay Tisdale and the Illinois Class Members all their earned wages for all hours worked was made in good faith; and

h.      Whether UnityPoint's violations of the FLSA, IMWL, and/or IWPCA were willful.

107.    Tisdale knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

108.    As part of its regular business practices, UnityPoint intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, IMWL, and/or IWPCA with respect to Tisdale and the Putative Class Members.

109.    UnityPoint's illegal meal break deduction policy deprived Tisdale and the Putative Class Members of earned wages and overtime wages, which they are owed under federal and/or state law.

110.    There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

111.     This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. §
216(b).

112.     Those similarly situated employees are known to UnityPoint, are readily identifiable,
and can be located through UnityPoint's records.

### UNITYPOINT'S WAGE VIOLATIONS WERE WILLFUL AND/OR
### DONE IN RECKLESS DISREGARD OF THE FLSA AND ILLINOIS WAGE LAWS

113.     Tisdale incorporates all other paragraphs by reference.

114.     UnityPoint knew it was subject to the FLSA's and IMWL's respective overtime
provisions.

115.     UnityPoint knew the FLSA and IMWL required it to pay employees, including Tisdale
and the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of
pay for all hours worked after 40 in a workweek.

116.     UnityPoint knew it was subject to the IWPCA.

117.     UnityPoint knew the IWPCA required it to pay employees, including Tisdale and the
Illinois Class Members, all their earned wages (at the rates agreed to by the parties) for all hours
worked.

118.     UnityPoint knew Tisdale and the Putative Class Members were non-exempt employees
entitled to overtime.

119.     UnityPoint knew Tisdale and the Putative Class Members were paid on an hourly basis.

120.     UnityPoint knew Tisdale and the Putative Class Members worked more than 40 hours
in at least one workweek during the relevant statutory periods because UnityPoint required these
employees to record their hours worked using UnityPoint's timeclock system.

121.     UnityPoint knew the FLSA, IMWL, and IWPCA required it to pay Tisdale and the
Putative Class Members for all hours these employees performed compensable work.

- 14 -

122.    UnityPoint knew that, as Tisdale's and the Putative Class Members' employer, it had a duty to ensure these employees were not performing work that UnityPoint did not want performed during their unpaid "meal breaks."

123.    UnityPoint knew it failed to provide Tisdale and the Putative Class Members with *bona fide* meal breaks.

124.    UnityPoint knew Tisdale and the Putative Class Members did not actually receive *bona fide* meal breaks.

125.    UnityPoint knew Tisdale and the Putative Class Members regularly worked during their unpaid meal breaks because UnityPoint expected and required them to do so.

126.    UnityPoint knew Tisdale and the Putative Class Members regularly spent their meal breaks substantially performing their normal job duties for UnityPoint's predominant benefit.

127.    Thus, UnityPoint knew Tisdale and the Putative Class Members performed compensable work during their unpaid meal breaks.

128.    Nonetheless, UnityPoint automatically deducted 30 minutes a day from Tisdale's and the Putative Class Members' recorded work time for "meal breaks."

129.    Thus, UnityPoint knew, should have known, or recklessly disregarded whether it paid Tisdale and the Putative Class Members for all hours these employees performed compensable work, including during their unpaid meal breaks.

130.    In other words, UnityPoint knowingly, willfully, and/or in reckless disregard failed to pay Tisdale and the Putative Class Members overtime wages for all overtime hours worked, including hours worked during their unpaid meal breaks, in violation of the FLSA and/or IMWL.

131.    Likewise, UnityPoint knowingly, willfully, and/or in reckless disregard failed to pay Tisdale and the Illinois Class Members all their earned wages (at their agreed hourly rates) for all hours worked, including hours worked during their unpaid meal breaks, in violation of the IWPCA.

- 15 -

132.     UnityPoint's failure to pay Tisdale and the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all hours worked made in good faith.

133.     Likewise, UnityPoint's failure to pay Tisdale and the Illinois Class Members all their earned wages (at the rates agreed to by the parties) for all hours worked was neither reasonable, nor was the decision not to pay these employees all their earned wages (at the rates agreed to by the parties) for all hours worked made in good faith.

134.     UnityPoint knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Tisdale and the Putative Class Members of earned wages and overtime wages in violation of the FLSA, IMWL, and/or IWPCA.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

135.     Tisdale incorporates all other paragraphs by reference.

136.     Tisdale brings his FLSA claim as a collective action on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

137.     UnityPoint violated, and is violating, the FLSA by employing non-exempt employees (Tisdale and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek, including hours worked during these employees' unpaid meal periods.

138.     Tisdale and the FLSA Collective Members have been harmed as a direct and proximate result of UnityPoint's unlawful conduct because they have been deprived of wages owed for work that they performed and from which UnityPoint derived a direct and substantial benefit.

139.     Accordingly, Tisdale and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL**
**(ILLINOIS CLASS ONLY)**

140.     Tisdale incorporates all other paragraphs by reference.

141.     Tisdale brings his claim under the IMWL as a class action on behalf of himself and the Illinois Class Members pursuant to FED. R. CIV. P. 23.

142.     The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

143.     At all relevant times, UnityPoint was an "employer" within the meaning of the IMWL.

144.     At all relevant times, UnityPoint employed Tisdale and the Illinois Class Members as covered "employees" within the meaning of the IMWL.

145.     The IMWL requires employers, like UnityPoint, to pay employees, including Tisdale and the Illinois Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

146.     UnityPoint violated, and is violating, the IMWL by failing to pay TIsdale and the Illinois Class Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after 40 in a workweek, including hours worked during these employees' unpaid "meal breaks." *See* 820 ILCS 105/4a.

147.     UnityPoint's unlawful conduct harmed Tisdale and the Illinois Class Members by depriving them of the overtime wages they are owed.

148.     Accordingly, Tisdale and the Illinois Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of Tisdale's Original Complaint (Doc.

1), treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT III

### FAILURE TO PAY ALL WAGES UNDER THE IWPCA
### (ILLINOIS CLASS ONLY)

149.    Tisdale incorporates all other paragraphs by reference.

150.    Tisdale brings his claim under the IWPCA as a class action on behalf of himself and the Illinois Class Members pursuant to FED. R. CIV. P. 23.

151.    The conduct alleged violates the IWPCA (820 ILCS 115/1, *et seq*.).

152.    At all relevant times, UnityPoint was an "employer" within the meaning of the IWPCA.

153.    At all relevant times, UnityPoint employed Tisdale and the Illinois Class Members as covered "employees" within the meaning of the IWPCA.

154.    The IWPCA requires employers, like UnityPoint, to pay employees, including Tisdale and the Illinois Class Members, for all time they worked at the rate(s) agreed to by the parties.

155.    During the course of their employment, UnityPoint agreed to pay Tisdale and each Illinois Class Member an hourly rate for all hours they worked under and up to 40 in a workweek.

156.    Tisdale and each Illinois Meal Break Class Member accepted UnityPoint's offer.

157.    But during the course of their employment, UnityPoint failed to pay Tisdale and the Illinois Class Members for all time they worked at the rates UnityPoint agreed to pay them for the work they performed because UnityPoint automatically deducted 30 minutes/shift from these employees' recorded hours worked.

158.    Thus, UnityPoint violated, and is violating, the IWPCA by failing to pay Tisdale and the Illinois Class Members all their earned wages (at their agreed hourly rates) for all the hours of work they performed for UnityPoint's benefit.

159.     UnityPoint's unlawful conduct harmed Tisdale and the Illinois Class Members by depriving them of the earned wages they are owed.

160.     Accordingly, Tisdale and the Illinois Class Members are entitled to recover their unpaid "straight time" compensation (at their agreed hourly rates) owed from the 10 years prior to the filing of Tisdale's Original Complaint (Doc. 1), treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

161.     Tisdale demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Tisdale, individually and on behalf of the Putative Class Members, seeks the following relief:

a.      An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order designating the Illinois Class as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Tisdale and his counsel to represent the interests of the FLSA Collective and Illinois Class;

d.      An Order pursuant to Section 16(b) of the FLSA finding UnityPoint liable for unpaid back wages due to Tisdale and the FLSA Collective Members, as

well as for liquidated damages in an amount equal to their unpaid compensation;

e.      An Order finding UnityPoint liable to Tisdale and the Illinois Class Members for unpaid overtime compensation owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f.      An Order finding UnityPoint liable to Tisdale and the Illinois Class Members for unpaid "straight time" wages owed under the IWPCA, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

g.      Judgment awarding Tisdale and the Putative Class Members all unpaid wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties available under the FLSA, IMWL, and IWPCA;

h.      An Injunction precluding UnityPoint from violating the IWPCA;

i.      An Order awarding attorney's fees, costs, and expenses;

j.      Pre- and post-judgment interest at the highest applicable rates; and

k.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Andrew W. Dunlap
Michael A. Josephson*
Andrew W. Dunlap*
Olivia R. Beale*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Admitted pro hac vice*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**